# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | | |
|---|---|---|
| ADI WORLDLINK, LLC | § | |
| | § | Civil Action No. 4:16-CV-665 |
| v. | § | (Judge Mazzant/Judge Nowak) |
| | § | |
| RSUI INDEMNITY COMPANY | § | |
| | § | |

## MEMORANDUM ADOPTING REPORT AND
## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

Came on for consideration the report of the United States Magistrate Judge in this action, this matter having been heretofore referred to the Magistrate Judge pursuant to 28 U.S.C. § 636. On August 16, 2017, the report of the Magistrate Judge (Dkt. #95) was entered containing proposed findings of fact and recommendations that Defendant RSUI Indemnity Company's Motion for Summary Judgment (Dkt. #71) be granted, Plaintiff Adi WorldLink, LLC's Amended Motion for Partial Summary Judgment (Dkt. #76) be denied, and Defendant's Motion to Strike Summary-Judgment Evidence (Dkt. #79) be denied as moot. Having received the Report and Recommendation of the Magistrate Judge (Dkt. #95), having considered Plaintiff's timely filed objections (Dkt. #100), and having conducted a de novo review, the Court is of the opinion that the findings and conclusions of the Magistrate Judge are correct, and as such adopts the Magistrate Judge's report (Dkt. #95) as the findings and conclusions of the Court.

## RELEVANT BACKGROUND

The instant case arises from an insurance coverage dispute between Plaintiff Adi WorldLink, LLC ("WorldLink" or "Plaintiff") and Defendant RSUI Indemnity Company ("RSUI" or "Defendant"). Plaintiff, the insured, seeks defense cost coverage from Defendant, the insurer, for several claims made against Plaintiff from 2014 through 2016. Defendant denied coverage for

these claims. Plaintiff sues for breach of contract and violation of various provisions of the Texas

Insurance Code and the Texas Deceptive Trade Practices Act (the "DTPA").

***Insured's Claims***

On July 31, 2014, Derek Lamb and Doan Nguyen (collectively "Lamb") filed a complaint

against WorldLink before the American Arbitration Association, alleging that WorldLink failed

to pay Lamb overtime for at least three years and improperly categorized Lamb as an "exempt"

employee under the Fair Labor Standards Act ("FLSA") (Dkt. #71, Ex. 4). Lamb later added

claims under Washington and Michigan state law for similar allegations (Dkt. #71, Ex. 3 at 174-

75). The Court hereinafter refers to the Lamb arbitration and claims as the "Lamb Claim." On or

before August 11, 2014, Plaintiff received notice that Lamb had filed the Lamb Claim

(Dkt. #71, Exs. 3 at 162-62, 5 at 5). Beginning around April 2015, other IMP engineers, like

Lamb, initiated arbitration proceedings against WorldLink for the same allegedly improper

employment practices (*see* Dkt. #71, Ex. 3 at 154-61, 94-107). The Court hereinafter and

collectively refers to these claims made during the 2015 Policy period as the "2015 Claims."

Plaintiff notified RSUI of each of these claims and the Lamb claim on September 16, 2015

(Dkt. #71, Ex. 6 at 25). On October 5, 2016 RSUI denied coverage for all of Plaintiff's claims

(Dkt. #71, Ex. 6 at 25).

For nearly a year following RSUI's denial of coverage, WorldLink and RSUI continued to

discuss the disputed coverage of Plaintiff's claims (*see* Dkt. #71, Ex. 6 (RSUI denial letters)). The

complaints filed against WorldLink all arise from WorldLink's alleged failure to categorize IMP

engineers as non-exempt, and involve claims arising under the FLSA, state copycat statutes, and/or

related state statutes (*see, e.g.*, Dkt. #71, Ex. 3). RSUI denied defense coverage for these claims

due to WorldLink's untimely notice to RSUI of the Lamb Claim, and because each of the claims

is "interrelated" such that they constitute a "single claim" under WorldLink's Directors and

Officers liability insurance policy (*see* Dkt. #71, Ex. 6).

***WorldLink's Directors and Officers Liability Insurance Policies***

The instant case involves two insurance policies: (1) WorldLink's Directors and Officers

liability insurance policy for the period of December 31, 2013, to December 31, 2014 ("2014

Policy"); and (2) WorldLink's Directors and Officers liability insurance policy for the period of

December 31, 2014, to January 14, 2016 ("2015 Policy") (collectively the "Policies"). Regarding

WorldLink's (the Insured's) making and reporting of a claim to RSUI (the Insurer), both Policies

provide:

> If during the Policy Period or Discovery Period (if applicable), any Claim is first made, it shall be a ***condition precedent*** to the Insurer's obligation to pay, that the Insured give written notice of such Claim to the Insurer ***as soon as practicable*** after the Insured's Chief Executive Officer, Chief Financial Officer, General Counsel, or Risk Manager of the Insured Organization or equivalent person first becomes aware of the Claim, but ***in no event shall*** such notice be given ***after either the expiration date or any earlier cancellation date of this policy or sixty (60) days after the expiration or earlier cancellation date of this policy*** if the Claim is first made agaisnt and Insured during the final 30 days of the Policy Period.
>
> . . .
>
> If, during the Policy Period or Discovery Period (if applicable), [the] Insured first becomes aware of any facts or circumstances which may reasonably be expected to give rise to a Claim against [the] Insured and, as soon as practicable thereafter, but before the expiration date or any earlier cancellation date of this policy, gives to the Insurer written notice, of such facts or circumstances along with the full particulars described below, then any Claim subsequently made against [the] Insured arising out of such facts or circumstances will be deemed first made during the Policy Period. The written notice shall include, at a minimum:
> a. The names or identity of the potential claimants and a detailed description of the specific alleged Wrongful Act and
> b. The circumstances by which the Insured first became aware of the specific alleged Wrongful Act.

(Dkt. #71, Exs. 1 & 2 at 15, 34 (the "Claims Made and Reported Requirement") (emphases added);

*see also* Dkt. #71, Ex. 1 & 2 at 26 ("this is a claims made and reported policy that applies only to

those claims first made against the insured during the policy period that are reported to the insurer during the policy period, or within sixty (60) days thereafter")).   In the Policies, a "Single Claim" for coverage purposes is defined as:

> All Claims based on, arising out of, directly or indirectly resulting from, in consequence of, or in any way involving the same or related facts, circumstances, situations, transactions or events, or the same or related series of facts, circumstances, situations, transactions or events, shall be deemed to be a ***single Claim*** for all purposes under this policy, shall be subject to the Retention stated in Item 4 of the Declarations Page, and shall be deemed first made when the earliest of such Claims is first made, regardless of whether such date is before or during the Policy Period.

(Dkt. #71, Exs. 1 & 2 at 33 (emphasis added) (the "Interrelatedness Condition")).   Further, the Policies specifically exclude claims arising on or before December 31, 2012:

> The Insurer shall not be liable to make any payment for Loss in connection with any Claim made against any Insured:
>
> Alleging, arising out of, based upon or attributable to, in whole or in part, any litigation involving any Insured that was commenced or initiated prior to, or pending as of December 31, 2012, or arising out of or based upon, in whole or in part, any facts or circumstances underlying or alleged in any such prior or pending litigation.

(Dkt. #71, Exs. 1 & 2 at 9, 31 (the "Prior/Pending Litigation Exclusion")).

*The Instant Case*

On August 29, 2016, Plaintiff filed the instant suit, seeking declaratory judgment and damages for breach of contract (Dkt. #1).   On November 17, 2016, Plaintiff added claims for violations of the Texas Unfair Insurance Practices Act, Prompt Payment of Insurance Claims Act, and the DTPA (Dkt. #27, Ex. A).   On August 19, 2016, RSUI filed suit for declaratory judgment in the Eastern District of Michigan (*see* Dkt. #71, Ex. 8).   The Eastern District of Michigan dismissed Defendant's suit, finding Plaintiff's action before this Court more appropriate (*see* Dkt. #71, Ex. 8).

On July 7, 2017, Defendant filed the RSUI Motion for Summary Judgment (Dkt. #71).  On July 21, 2017, Plaintiff filed a Response (Dkt. #80).  Defendant filed a Reply on July 31, 2017 (Dkt. #84). On August 4, 2017, Plaintiff filed a Surreply (Dkt. #91).  Plaintiff filed the WorldLink Motion for Partial Summary Judgment on July 13, 2017 (Dkt. #76).  On July 21, 2017, Defendant filed a Response to the WorldLink Motion for Partial Summary Judgment (Dkt. #78).  On the same day, Defendant moved to strike certain attachments to the WorldLink Motion for Partial Summary Judgment (Dkt. #79).  Plaintiff filed a Reply on July 28, 2017 (Dkt. #83).  On August 4, 2017, Plaintiff filed a Response to Defendant's Motion to Strike (Dkt. #90).  On August 16, 2017, the Magistrate Judge entered a report and recommendation (Dkt. #95) recommending that Defendant RSUI Indemnity Company's Motion for Summary Judgment (Dkt. #71) be granted, Plaintiff Adi WorldLink, LLC's Amended Motion for Partial Summary Judgment (Dkt. #76) be denied, and Defendant's Motion to Strike Summary-Judgment Evidence (Dkt. #79) be denied as moot.  On August 22, 2017, in a telephonic status conference before the Court, the Parties agreed to file any objections to the Magistrate Judge's Report and Recommendation no later than August 26, 2017 and file any responses to objections no later than September 1, 2017 (Dkt. #97).  Plaintiff timely filed objections to the Magistrate Judge's Report and Recommendation on August 26, 2017 (Dkt. #100). Defendant filed a response to Plaintiff's objections on September 1, 2017 (Dkt. #104).

## OBJECTIONS

A party who files timely written objections to a magistrate judge's report and recommendation is entitled to a de novo review of those findings or recommendations to which the party specifically objects. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(2)-(3).  At the outset, the Court notes the Magistrate Judge finds in the Report and Recommendation that: (1) Texas law governs the reading of different contractual issues in this case; (2) Plaintiff's failure to notify

Defendant of the Lamb Claim within the 2014 Policy precluded coverage for the Lamb claim, regardless of prejudice suffered by Defendant as a result; (3) the 2014 Policy's Interrelatedness Condition aggregates the Lamb Claim and the 2015 Claims into a single claim governed by the 2014 Policy; (4) Plaintiff's failure to report the Lamb Claim within the 2014 Policy period precludes coverage for the Lamb Claim and the 2015 Claims; (5) Plaintiff's failure to comply with the 2014 Policy's notice provision excuses Defendant of any duty to defend or indemnify for the Lamb Claim or the 2015 Claims; and (6) each of Plaintiffs' claims for violations of the Texas Insurance Code and the DTPA should be dismissed (Dkt. #95). Plaintiff's primary objection with the Magistrate Judge's Report and Recommendation is the finding that Plaintiff's failure to report the Lamb Claim precludes coverage of the 2015 Claims. Plaintiff argues that "[t]he Magistrate erred in finding the 2015 claims are not covered under the 2015 Policy on the basis that the Interrelatedness Condition in the 2015 Policy deems the 2015 Claims and [the Lamb Claim] to be a single Claim filed before the effective date of the 2015 Policy Period" (Dkt. #100 at 1) (emphasis in original). Specifically, Plaintiff asserts this conclusion is erroneous because "*Gastar Exploration Ltd. v. U.S. Specialty Ins. Co.*, 412 S.W.3d 577 (Tex. App.—Houston [14th Dist.] 2013) (pet. den.) [] is directly on-point and controlling, and it dictates that the Prior Litigation Endorsement renders the Interrelatedness Condition inapplicable here….[and] requires coverage for the 2015 Claims under the 2015 Policy" (Dkt. #100 at 1) (emphasis in original). Further, Plaintiff argues that because the Magistrate Judge's decision regarding Plaintiff's extra-contractual claims is premised on an incorrect analysis of coverage, the Court's recommendation that these claims be dismissed is incorrect (Dkt. #100 at 1).

Neither Party objects to the Magistrate Judge's findings regarding the use of Texas law for determination of the contractual issues, Plaintiff's failure to notify Defendant of the Lamb Claim

on or before the 2014 Policy, and precluded coverage for the Lamb claim (*see* Dkts. #100, 104).

As such, the Court adopts these findings and proceeds to evaluate the remaining claims and

findings.

***Objection 1:   Distinction of* Gastar *To the Instant Case***

Plaintiff objects that the Magistrate Judge erroneously distinguished *Gastar* from the

instant case (Dkt. #100 at 2).  Plaintiff asserts that the "similarities between *Gastar* and the issues

on summary judgment in this case are striking" (Dkt. #100 at 2).   Specifically, Plaintiff contends

that these similarities include: (1) claims-made-and-reported policies; (2) "materially identical

Interrelatedness Condition[s] and Prior Litigation Endorsement[s];" (3) identical arguments from

the defendants in each case: "that the Interrelatedness Condition barred coverage under the subject

policy for claims that were first made and reported during the subject policy period, because the

Interrelatedness Condition related those claims back to an earlier claim filed before the subject

policy period;" and (4) conflict between the Prior Litigation Endorsement and the Interrelatedness

Condition (Dkt. #100 at 2).  Plaintiff asserts that:

> The *Gastar* court held that Prior Litigation Endorsement precluded the insurer from
> applying the Interrelatedness Condition to deny coverage under the subject 2009
> Policy for claims first made during the 2009 Policy Period that were related to
> Claims filed in 2006 (well before the 2009 Policy's effective date, but after the
> Prior Litigation Endorsement's 2000 bright-line date). The court reasoned that the
> Prior Litigation Endorsement irreconcilably conflicted with the Interrelatedness
> Condition….Because endorsements control over policy form provisions, the
> *Gastar* [c]ourt held that the Prior Litigation Endorsement controlled over the
> Interrelatedness Condition (which would have otherwise excluded coverage for the
> 2009 Claims under the subject 2009 Policy).

(Dkt. #100 at 2-3) (footnote omitted).  Plaintiff analogizes *Gastar* to the instant case and contends:

> [j]ust as in *Gastar*, the Prior Litigation Endorsement conflicts with the
> Interrelatedness Condition: while the Interrelatedness Condition excludes coverage
> under the subject 2015 Policy for claims first made during the 2015 Policy that
> relate to the 2014 Lamb Claim (because Lamb was filed <u>before</u> the 2015 Policy
> inception date), the Prior Litigation Endorsement affirms coverage under the

subject 2015 Policy for claims first made during the 2015 Policy that relate the 2014 Lamb Claim (because it was filed <u>after</u> the Endorsement's 2012 bright-line date). As in *Gastar*, in light of the conflict, the Prior Litigation Endorsement controls.

(Dkt. #100 at 2-3) (emphasis in original).

Defendant responds that *Gastar* is factually and legally distinguishable and is not controlling authority (Dkt. #104 at 3). First, Defendant argues that the insurers' underlying reasons for denial of coverage differ. Defendant avers that in *Gastar*, the insurers denied coverage after determining that all of the insured's claims were so interrelated that they constituted one claim (Dkt. #104 at 4). Because at least one of the first related claims pre-dated the policy period, the insurers deemed all of the insured's claims as made outside of the subject policy period and therefore, not covered (Dkt. #104 at 4). Defendant asserts that here, however, RSUI denied coverage for the Lamb Claim because Plaintiff failed to comply with the 2014 Policy's notice requirement, and subsequently denied coverage for the 2015 Claims because all of the 2015 Claims were related to the Lamb Claim and therefore, constituted a single claim under the Interrelatedness Condition (Dkt. #104 at 4). RSUI thus ultimately denied coverage for the 2015 Claims due to Plaintiff's failure to timely give notice of the Lamb Claim because these claims related back to the Lamb Claim, which was not covered (Dkt. #104 at 4). Second, Defendant distinguishes *Gastar* from the instant case because:

> [t]he *Gastar* court noted that the prior litigation exclusion had a 'narrower effect' than the interrelationship of claims provision because it excluded from coverage only claims made during the policy period, but arising out of any pending litigation as of May 31, 2000. Therefore, in the court's view, the claims first made in 2006 would be 'placed in the covered window' by the endorsement because the lawsuits were filed *after May 31, 2000,* but before the effective date of the policy.

(Dkt. #104 at 4). In the instant case, Defendant contends that "[t]he Prior/Pending Litigation Exclusion has no application or relevance under these facts" (Dkt. #104 at 4). Defendant points out that Plaintiff's Objection wholly omits any discussion that the basis for RSUI's denial of

coverage for the Lamb Claim and the 2015 Claims was Plaintiff's non-compliance with the 2014

Policy's reporting requirement  (Dkt. #104 at 5).  Defendant contends that Plaintiff's conclusion

that "RSUI denied coverage for the 2015 Claims because the 2015 Claims were related to a claim

(the Lamb Claim) that pre-dated the inception of the 2015 Policy (like the insurers in *Gastar*)" is

inaccurate because "[i]f World[L]ink had timely reported the Lamb Claim, complying with 2014

Policy's insuring agreement and conditions, the 2015 Claims would have been covered (subject to

any policy provisions and exclusions) *under the 2014 Policy based on the interrelated claims*

*provision*" (Dkt. #104 at 5-6) (emphasis in original).

Importantly, the Magistrate Judge recognized this crucial distinction in the Report and

Recommendation:

> Critically, however, the earlier claim in the instant case (the Lamb Claim) arose during a prior policy period, namely the 2014 Policy period, and not wholly outside of any policy period.  Accordingly, while the three earlier claims in the *Gastar* case would automatically have received no coverage, the Lamb Claim received no coverage because Plaintiff failed to comply with the 2014 Policy notice terms.  In other words, the interrelationship of claims provision in *Gastar* would have *itself* operated as an exclusion because it aggregated potentially covered claims with claims the policy simply did not cover—it would have impermissibly swallowed up and rendered meaningless the narrower prior and pending litigation exclusion. By contrast, here, the 2014 Policy's Interrelatedness Condition itself only aggregates the 2015 Claims with the Lamb Claim.  Plaintiff's failure to comply with the 2014 Policy's notice provision causes the exclusion, not the Interrelatedness Condition.  Under the circumstances, and unlike in *Gastar*, the Interrelatedness Condition in no way conflicts with the Prior/Pending Litigation Exclusion.  Indeed, applying *Gastar*'s inapposite reasoning here would create coverage through the Prior/Pending Litigation Exclusion that (by virtue of Plaintiff's failure to report) otherwise would not exist, which the Court may not do.

(Dkt. #95 at 31-32) (internal citations omitted).

## A.    *Existence of Predecessor Policies*

Plaintiff first challenges the Magistrate Judge's Report and Recommendation by arguing

that the Magistrate Judge erroneously distinguished *Gastar* from the instant case on an incorrect

factual assumption that there were no predecessor policies in *Gastar,* as there are in the instant case (Dkt. #100 at 5).  Plaintiff avers that there were predecessor policies in *Gastar* and attaches the underlying briefing from *Gastar* in support of this contention (Dkt. #100 at 5, Ex. B at 3).  Defendant responds that "[w]hat is clear from the briefing…is that U.S. Specialty, the primary insurer, provided *Gastar* with coverage *beginning* in November 2006 [(Dkt. #100, Ex. B at 39)], and that first of the ten related 'Mare Lease Suits' was filed on June 1, 2006, before the effective date of the first U.S. Specialty policy" (Dkt. #104 at 6) (emphasis in original).

The Court finds that the Magistrate Judge's statement that "the earlier claim in the instant case (the Lamb Claim) arose during a prior policy period, namely the 2014 Policy period, and not wholly outside of any policy period" is correct.  When read in context of the entire Report and Recommendation, this statement demonstrates that in *Gastar*, the plaintiff-insured was not insured by the defendant-insurer when the three earlier claims arose, whereas here, Plaintiff was insured and subject to Defendant's policy terms when the Lamb Claim arose (*see* Dkt. #95 at 31). In *Gastar*, the insurers sought to deny coverage for all of the insured's claims by utilizing the interrelatedness condition as an exclusion by deeming all claims as a single claim and then automatically denying coverage on the basis that this single claim arose before the subject policy period.  412 S.W.3d at 581.  Here, Defendant denied coverage of the Lamb Claim because of Plaintiff's failure to comply with the notice requirements of the 2014 Policy (Dkt. #95 at 31). Because the Lamb Claim and the 2015 Claims were aggregated as a single claim, Defendant denied coverage for the 2015 Claims because of Plaintiff's failure to provide timely notice for the Lamb Claim (*see* Dkt. #95 at 31-32).

### B. *Relevance of Predecessor Policies*

Second, Plaintiff argues that the Magistrate Judge erroneously distinguished *Gastar* from the instant case because "even if [the Magistrate Judge's] factual assumption had been correct, it would not be a basis to disregard *Gastar*, because as a matter of law, the availability of coverage under a predecessor policy is irrelevant to coverage under the subject policy (the 2015 Policy)" (Dkt. #100 at 1) (emphasis in original). Plaintiff specifies that under the 2015 Policy's terms, the unavailability of coverage under the 2014 Policy for the Lamb Claim made before the 2015 Policy has no legal effect on coverage for the 2015 Claims under the 2015 Policy because: (1) under Section Q: Acceptance[1], the terms of the 2015 Policy demonstrate that coverage under the 2015 Policy is not affected by the existence of any other policy[2]; and (2) "the very nature of claims-made-and-reported coverage renders coverage for earlier claims under a predecessor policy irrelevant" (Dkt. #100 at 5-6). Initially, the Court notes that Plaintiff did not raise the argument that under Section Q: Acceptance, the terms of the 2015 Policy demonstrate that coverage under the 2015 Policy is not affected by the existence of any other policy before the Magistrate Judge. "The filing of objections is not an opportunity for Plaintiff[] to reopen summary judgment evidence and present new arguments. Nor is it an opportunity to infer facts or arguments that were not actually present in the pleadings and summary judgment response." *Green v. Bank of Am., N.A.*, No. 4:13CV92, 2013 WL 6178499, at *1 (E.D. Tex. Nov. 25, 2013) (Clark, J.). Even so, Plaintiff's argument[3] is meritless. The Court notes that the Magistrate Judge's Report and Recommendation found that the Lamb Claim and the 2015 Claims were deemed a single claim under the

---

[1] Section Q. Acceptance reads: "[t]he insureds agree that this policy, including the Application and any endorsements, constitutes the entire agreement between them and the Insurer relating to this insurance policy" (Dkt. #71, Ex. 2 at 37).

[2] The Court notes that Defendant does not address this argument in its Response (Dkt. # 104).

[3] Plaintiff argues that "[p]ursuant to Condition Q, only the terms of the 2015 Policy are relevant to coverage for the 2015 Claims under the 2015 Policy" (Doc. #100 at 5-6).

Interrelatedness Condition in the 2014 Policy (Dkt. #95 at 31). This conclusion is incorrect because the reference by the Magistrate Judge should have been to the 2015 Interrelatedness Condition – which is identical to that provision found in the 2014 Policy. By virtue of the Interrelatedness Condition (Dkt. #71, Ex. 2 at 33), the 2015 Claims were deemed to be a single claim with the Lamb Claim (Dkt. #71, Ex. 6 at 6, 14, 22-23, 27-28, 34, 40, 52, 60, 69-70). As a result, the 2015 Claims related back to the earlier filed Lamb Claim, and therefore, Defendant determined coverage of the 2015 Claims under the 2014 Policy (*see* Dkt. #71, Ex. 6 at 6, 14, 22-23, 27-28, 34, 40, 52, 60, 69-70). However, because the Interrelatedness Conditions are identical in the 2014 Policy and the 2015 Policy, Plaintiff's argument as to which policy's Interrelatedness Condition must be utilized is inconsequential. Moreover, under Texas law, an interrelatedness condition (like those present in this case) can be utilized to determine whether a claim made during the subject policy period should be deemed to have been first made at the time of an earlier claim. *John M. O'Quinn P.C. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 33 F. Supp. 3d 756, 768 (S.D. Tex. 2014) (interpreting an interrelatedness condition in a claims-made-and-reported policy under Texas law). When a claim is deemed to have been first made at the time of an earlier claim under an earlier policy, coverage of the claim is determined under the earlier policy. *Id*. ("[w]hen employing the reasoning set forth in [*Reeves Cty. v. Houston Cas. Co.*, 356 S.W.3d 664, 671 (Tex. App.—El Paso 2011)] coupled with the plain language of the [interrelatedness condition], the Court determines that while [the claim made during the subject period] was filed [during the subject policy period], for purposes of determining which policy period applies, it constitutes a single claim *first made* when [the earlier claim]—the suit encompassing the first claim alleging the same and/or Interrelated Wrongful Acts—was *first filed* during the 1998 policy period") (emphasis in original). Plaintiff does not raise any law that would yield a contrary result.

Clarifying its second contention, Plaintiff argues that because "[c]laims-made-and-reported coverage requires a claim to both be first made (*i.e.* filed and served) and reported to the insurer during the subject policy period," it follows that here, considering only the Interrelatedness Condition, any claim made during the 2015 Policy Period that is related to an earlier claim made before the 2015 Policy will not be covered under the 2015 Policy—"unless another term (here, as in *Gastar*, the Prior Litigation Endorsement) restores coverage" (Dkt. #100 at 6). Plaintiff avers that the Magistrate Judge directly contradicted pertinent case law when it found that the "Interrelatedness Condition does not itself exclude coverage"(Dkt. #100 at 6) (citing *Burks v. XL Specialty Ins. Co.*, No. 14-14-00740-CV, 2015 WL 6949610, at *5 (Tex. App.—Houston [14th Dist.] Nov. 10, 2015) (no pet.)). Plaintiff concludes that "[b]y deeming a claim first made prior to the effective date of the subject policy, the Interrelatedness Condition necessarily excludes coverage under the subject policy, because the subject policy only provides coverage if the claim is first made during the subject policy period" (Dkt. #100 at 7). Defendant agrees that the existence of the predecessor policies was irrelevant to the holding in *Gastar* (Dkt. #104 at 6) ("The *Gastar* court does not discuss the 'predecessor policies' in its opinion, so their significance is, at best, minimal."). However, Defendant maintains that the existence of a predecessor policy is relevant here and would have been relevant in *Gastar* had the insured failed to comply with the policy's terms (such as providing untimely notice of the claims) (Dkt. #104 at 6).

Plaintiff mischaracterizes the intersection of claims-made-and-reported policies and interrelatedness conditions as it pertains to this case. Plaintiff's contention that the Magistrate Judge's statement conflicted with pertinent case law when it found that the "Interrelatedness Condition does not itself exclude coverage" is incorrect. Again, Defendant did not deny coverage for the 2015 Claims by aggregating the Lamb Claim and the 2015 Claims and denying coverage

because the 2015 Claims subsequently arose outside of the 2015 Policy period (Dkt. #71, Ex. 6).

Instead, Defendant denied coverage for the Lamb Claims and the 2015 Claims, aggregated into a

single claim under the Interrelatedness Condition, because Plaintiff failed to comply with the

notice requirement in untimely reporting the Lamb Claim (Dkt. #71, Ex. 6). Defendant did not

deny coverage of the 2015 Claims solely on the basis of the Interrelatedness Condition

(*see* Dkt. #71, Ex. 6). The Magistrate Judge's full statement, "[i]n the instant case, the Court finds

that, by its plain terms, the 2014 Policy's Interrelatedness Condition does not itself exclude

coverage," is therefore accurate under the facts present in this case. Additionally, the Court agrees

with Defendant that "[i]f World[L]ink had timely reported the Lamb Claim, complying with 2014

Policy's insuring agreement and conditions, the 2015 Claims would have been covered (subject to

any policy provisions and exclusions) **under the 2014 Policy based on the interrelated claims**

**provision**" (Dkt. #104 at 6) (emphasis in original) (*see also Burks*, 2015 WL 6949610, *5) ("Most

often, insurers use [interrelatedness conditions] to exclude coverage for claims made during the

policy period when those claims relate to claims made before the policy period began. But such a

provision can also be used…to have a claim that is made after the policy period deemed one made

during the policy period, thus including coverage for a subsequent claim.").

### C.    Gastar *Materially Distinct*

The Court finds that *Gastar* is materially distinct from the instant case under the same

reasoning as the Magistrate Judge. The important distinction between *Gastar* and the instant case

is that Defendant did not deny coverage for the 2015 Claims solely on the Interrelatedness

Condition (Dkt. #71, Ex. 6). Instead, Defendant denied coverage for the 2015 Claims (deemed a

single claim with the Lamb Claim) because of Plaintiff's noncompliance with the 2014 Policy's

notice requirements in regards to the Lamb Claim (Dkt. #71, Ex. 6). Accordingly, the Court must

take a further step in its analysis that the *Gastar* court was not required to take: to determine coverage in light of the insured's compliance or noncompliance with the applicable policy requirements. *See Gilbert Tex. Constr. v. Underwriters at Lloyd's London*, 327 S.W.3d 118, 129 n.7 (Tex. 2010) ("each policy must be interpreted according to its own specific provisions and coverages"). Additionally, unlike *Gastar*, the Interrelatedness Condition in the instant case does not conflict with the Prior/Pending Litigation Exclusion. Because Defendant denied coverage of the 2015 Claims because they related back to the untimely notice of the Lamb Claim, the Prior/Pending Litigation Exclusion is irrelevant to Defendant's denial of coverage. By deeming the 2015 Claims to be a single claim with the Lamb Claim, Defendant did not deny the 2015 Claims because of *when* they were made, but because of *how* they were made. Because the Prior/Pending Litigation Exclusion affects only when a claim is made, it is not relevant to whether Plaintiff complied with the reporting requirements of the 2014 Policy. The Court does not find *Gastar* to be directly on point and controlling as Plaintiff contends. Because the Lamb Claim and the 2015 Claims are a single claim governed by the 2014 Policy, Plaintiff's failure to timely report the Lamb Claim precludes coverage for the Lamb Claim and the 2015 Claims. Plaintiff's objection is overruled.

***Objection 2:    Texas Insurance Code and DTPA Findings***

Plaintiff asserts that the Magistrate Judge's findings in regards to Plaintiff's extra-contractual claims are predicated on its erroneous finding that there is no coverage in this case (Dkt. #100 at 7). Plaintiff argues that "[b]ecause there is in fact coverage for the 2015 Claims under the 2015 Policy, WorldLink's Objections to the Magistrate's Report should be sustained" (Dkt. #100 at 7). Further, Plaintiff argues that "[i]n a misapprehension of WorldLink's evidence, the Magistrate [Judge] suggested that WorldLink's claims under these statutes…fail because

'Defendant's reliance on a relatively inexperienced claims handler who did not have a claims handling manual and who did not consider a certain jurisdiction's law [does not] amount to a violation of the Insurance Code or the DTPA'" (Dkt. #100 at 7). Plaintiff continues that this "statement mistakes indicia of unreasonable conduct as the unreasonable conduct itself" (Dkt. #100 at 7). Plaintiff points out that it produced "evidence of the claims handler's inexperience, the lack of supervision, and the lack of claims manuals…as evidence that would support a jury's reasonable conclusion that the complained-of acts were arbitrary and self-serving, designed to deprive WorldLink of policy benefits without an adequate investigation" (Dkt. #100 at 8). Defendant responds that "[t]he Magistrate Judge correctly concluded that, because no coverage exists for the Lamb Claim and the 2015 Claims, World[L]ink's Insurance Code and DTPA claims fail as a matter of law" (Dkt. #104 at 7).

In its Report and Recommendation, the Magistrate Judge found that Plaintiff asserted its Insurance Code and DTPA claims on eight separate bases and listed them as follows:

> (1) RSUI's coverage decisions were made almost exclusively by a claims handler who had been on the job only a few months before denying WorldLink's multi-million dollar claim for coverage for dozens of lawsuits; (2) RSUI did not provide any formal training for the claims handler, only a half-day of informal, on-the-job training; (3) RSUI did not provide the claims handler with any manuals or guides as to how to perform his job; (4) the claims handler denied coverage immediately, based on one paragraph of analysis; (5) the claims handler admittedly did not consider key provisions (such as the Prior Litigation Exclusion) or applicable law, (6) the claims handler only sought out a coverage opinion months after denying coverage, from coverage counsel licensed to practice in Illinois; (7) RSUI filed suit before responding to correspondence containing new coverage arguments, despite acknowledging the investigation was still ongoing; and (8) RSUI filed suit in Michigan on the basis of "facts" that a simple investigation would have shown to be incorrect (e.g. WorldLink in reality had no Michigan office, three times as many underlying claimants resided in Texas than Michigan, etc.).

(Dkt. #95 at 35). The Magistrate held that "[b]ases (1) through (6) cannot support Plaintiff's Texas Insurance Code or DTPA claims" because: (1) "Plaintiff has no entitlement to coverage under the

Policies;" (2) Defendant responded to Plaintiff's requests for coverage with denials for the Lamb Claim (and all other claims) within a matter of weeks for each claim, and each time explained its reasons for denying the claims;" and (3) "Plaintiff cites no authority for its proposition that Defendant's reliance on a relatively inexperienced claims handler who did not have a claims handling manual and who did not consider a certain jurisdiction's law amounts to a violation of the Insurance Code or the DTPA" (Dkt. #95 at 35-36).

The Magistrate Judge also found that basis (7), Defendant's declaratory action in Michigan and Plaintiff's subsequent litigation expenses, also did not support any alleged violation of the Insurance Code or the DTPA because: (1) "the lawsuit [was] separable from that earlier claims handling conduct;" (2) "Defendant initiated the declaratory judgment action for the same reasons it had cited to Plaintiff in denying coverage numerous times before;" (3) "the Eastern District of Michigan court promptly granted Plaintiff's motion to dismiss on those grounds;" and (4) "Plaintiff sought no sanctions for the purportedly improper filing before the Eastern District of Michigan, the court best suited to evaluate Defendant's claims and filings made in that suit" (Dkt. #95 at 36).

Generally, there is no claim for allegedly improperly handled claims that are not covered. *Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995). If there is no policy coverage, then an insured's claims for failure to promptly to pay claims, failure to fairly investigate claims, and bad faith denial of claims all fail under Texas law. *Progressive Cty. Mut. Ins. Co. v. Boyd*, 177 S.W.3d 919, 922 (Tex. 2005). The same is true with regard to claims under the DTPA, at least insofar as the claims relate to the same alleged bad-faith conduct in insurance disputes. *E.g. Higginbotham v. State Farm Mut. Auto. Ins. Co.*, 103 F.3d 456, 460 (5th Cir. 1997) ("Texas courts have clearly ruled that these extra-contractual tort claims [under the DTPA and Insurance Code, respectively] require the same predicate for recovery as bad faith causes of action in Texas.").

Courts diverge from this general rule only where the insured demonstrates an "act so extreme as to cause independent injury" of the injuries sustained through the denial of coverage itself. *See, e.g.*, *Nat'l Sec. Fire & Cas. Co. v. Hurst*, --- S.W.3d ---, 2017 WL 2258243, at \*6 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Because there is no coverage for the 2015 Claims under the 2015 Policy (contrary to what Plaintiff asserts), Plaintiff is not entitled to relief under Texas law for its extra-contractual claims for violations of the Texas Insurance Code and the DTPA. The Court finds that the Magistrate Judge correctly found there was no coverage in this case and then appropriately recommended dismissal of Plaintiff's claims as a result.

Additionally, Plaintiff's argument that the Magistrate Judge "mistakes indicia of unreasonable conduct as the unreasonable conduct itself" is in direct conflict with the record before the Court. The Magistrate Judge specifically considered the summary judgment record and held that "[t]he claims handler made a determination based upon review of the Policies and the underlying claims, and nothing in the record evinces bad faith in that process" (Dkt. # 95 at 36). It is evident from its Report and Recommendation that the Magistrate Judge aptly considered Plaintiff's evidence and argument in the context of Plaintiff's claims that Defendant sought "to deprive WorldLink of policy benefits without an adequate investigation" (Dkt. #95 at 36). Plaintiff's objection is overruled.

## CONCLUSION

Having considered each of Plaintiff's timely filed objections (Dkt. #100), and having conducted a de novo review, the Court adopts the Magistrate Judge's report (Dkt. #95) as the findings and conclusions of the Court as to each of Plaintiff's claims.

Accordingly, it is **ORDERED** that Defendant RSUI Indemnity Company's Motion for Summary Judgment (Dkt. #71) is **GRANTED** and that each and every of Plaintiff's claims be

**DISMISSED** with prejudice, Plaintiff Adi WorldLink, LLC's Amended Motion for Partial Summary Judgment (Dkt. #76) is **DENIED**, and Defendant's Motion to Strike Summary-Judgment Evidence (Dkt. #79) is **DENIED AS MOOT**.

    **IT IS SO ORDERED**.
    **SIGNED this 18th day of September, 2017.**

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE